CELINA MUTUAL INSURANCE
COMPANY, Appellant,

v.

HARBOR INSURANCE AGENCY, LLC
(d/b/a Lake Barkley Insurance Agency);
and William Kearney, Appellees.

No. 2009–CA–000790–MR.

Court of Appeals of Kentucky.

July 16, 2010.

Discretionary Review Denied by
Supreme Court March 16, 2011.

Lindsay A. Smith (argued), Duane R. Skavdahl, Fort Mitchell, KY, for appellant.

Kevin M. McGuire and K. Brad Oakley (argued), Lexington, KY, for appellees.

Before CAPERTON and CLAYTON, Judges; BUCKINGHAM,[1] Senior Judge.

## OPINION

CLAYTON, Judge:

The Appellant, Celina Mutual Insurance Company, appeals from two orders of the Trigg Circuit Court granting summary judgment in favor of Harbor Insurance Agency and William Kearney (hereinafter the "Appellees"). In the first summary judgment order, the trial court ruled that Appellant's negligence action required expert testimony to establish the professional duties of an insurance agent. The trial court granted summary judgment in favor of Appellees on Appellant's negligence claims given that all discovery had been completed, that the time had expired for all expert and trial witness disclosures, and that Appellant did not have an expert witness.

In the second summary judgment order, the trial court ruled that Appellant's indemnity claims must fail as a matter of law and granted summary judgment in favor of Appellees. In this second summary judgment order, the trial court also dismissed Appellant's complaint, finding that it had disposed of all of Appellant's claims. Appellant argues that the trial court wrongfully granted summary judgment in both orders; Appellees disagree. After a thorough review of the record, the parties' arguments, and the applicable law, we find that the trial court did not abuse its discretion in finding that an expert witness was necessary to establish an insurance agent's professional duty, or in its determination that Appellant's indemnity claims must fail as a matter of law, or in dismissing Appellant's complaint because all of Appellant's claims had been addressed. Thus, we affirm the trial court.

The facts that gave rise to this appeal are briefly summarized. Todd Latham ("the insured") purchased a farm security policy of insurance from Harbor Insurance Agency through Celina Mutual Insurance Company. The insurance application asked the applicant to list all losses of the potential insured in the last five years. The insured disclosed to Harbor's agent Bill Kearney that he had a prior fire loss but maintained that the fire was not attributed to him and would not show up in his loss history. At this juncture, the parties disagree as to what happened next. Kearney asserts that he had a conversation with Appellant's employees about the prior fire loss and that Appellant investigated the insured's claims history at Kearney's request. Regardless, the application for insurance listed "none" in regard to the prior loss question. Approximately a month after the issuance of the policy, the insured's home and contents were destroyed in a fire and Appellant paid pursuant to the policy. Appellant contends that if Kearney had truthfully answered the application reflecting the prior fire loss of the insured, they would not have issued the policy. In light of these facts, the

---

1. Senior Judge David C. Buckingham, sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and the Kentucky Revised Statutes (KRS) 21.580.

Appellees brought forth their summary judgment motion.

The trial court's first summary judgment order of March 25, 2009, entered of record on March 30, 2009, concerned the negligence claims of Appellant. The trial court first set out what Appellant alleged in its complaint: Count I on negligence, errors, and omissions, wherein Appellant alleged that Appellees "held themselves out as experts in the field of insurance coverage and by reason of their position in the insurance industry, said Defendants were in a superior position to determine whether or not to recommend that Plaintiff Celina [now Appellant] provide insurance coverage to [the insured]."

The complaint further alleged that the Appellees "have a duty to exercise due care in their professional conduct." The trial court then noted that most professional negligence claims require expert testimony, with the common exception being where the experience or common knowledge of laymen is extensive enough to recognize or to infer negligence from the facts. Next, the trial court set out the crux of the order:

> The cases relied upon by Plaintiff do deal with insurance application irregularities, but they involve whether the company owes coverage to the insured based upon what the agent did or did not do in the application process. Here, we are dealing with what duties the insurance professional (agent) owed to the insurance company and that is a step removed from any duties owed to the insured. While jurors, as in *Mullins*, [*Mullins v. Commonwealth Life Insurance Co.*, 839 S.W.2d 245 (Ky.1992)], as insurance customers, might have some idea of an agent's duty to his customers in an automobile policy, it is difficult to see how the average person would have any idea of what duty or duties an agent

owed to the company which that agent represented. Likewise, the average person would have no idea whether that duty was breached by a particular agent.

> Therefore, based upon the facts of this case, expert testimony would be necessary to establish the duty from the agent to the company and whether such duty was breached given the facts of this case. While there may be a fact question about what conversations took place between the agent and company representatives, that fact is not material without expert proof on the standard of care due by insurance professionals under the circumstances here.

Trial court order of March 25, 2009. Hence, the trial court determined that Appellees were entitled to judgment as a matter of law on the negligence claims set out in the complaint.

The trial court's second summary judgment order of March 26, 2009, entered of record on March 30, 2009, concerned the indemnity claims of Appellant. The trial court first set out what Appellant alleged in its complaint: Count II, breach of contract and indemnification, wherein Appellant alleged that "Defendants are under an express and/or implied contractual duty to indemnify and hold harmless Plaintiff Celina for Defendants' negligent actions and/or omissions."

In paragraphs 25 and 26 of the complaint, Appellant referred to "contractual duty," "breach of contract," and "refusal to indemnify," which the trial court interpreted as Appellant's pursuing a claim for indemnity that was either expressed or implied in the contract. The trial court noted that under Kentucky law, parties may enter into an indemnification agreement as a part of a contract; however, there was no express provision for indemnification in the agency agreement between the parties. Thus, the trial court

found that Appellant's express indemnification claim must fail as a matter of law. Moreover, contained within the agency agreement was a provision that the terms of the agency agreement were "the entire Agreement between the parties" and that "[n]o other warranties or representations, except those specifically set out herein, exist between the parties[.]" The trial court concluded that the language of the contract precluded an implied obligation of indemnification; thus, Appellant's claim for an implied obligation of indemnification must fail as a matter of law.

The trial court then turned its attention to Appellant's common law indemnification claims and stated:

> [The trial court] does not necessarily believe that Plaintiff's common law indemnity argument fits the general tort indemnification analysis because the Plaintiff's liability to its insured arises from the insurance contract and not through the tortuous conduct of Defendants. (The [trial court] understands that Plaintiff alleges that but for the negligence of the agent in not putting the prior fire loss on the policy, there is a tort involved, but the [trial court] is still not convinced that it is applicable in this setting.)
>
> . . . .
>
> While it is true that Plaintiff has alleged that Defendants were at fault, that issue has been found against them by virtue of the Summary Judgment entered on the negligence claims. . . .
>
> . . . .
>
> . . . Plaintiff's common law indemnification argument must fail as a matter of law.

Trial court order of March 26, 2009. The trial court then granted the Appellees' motion for summary judgment on the indemnification claim and ordered that Appellant's complaint be dismissed as all claims had been disposed of. It is from these two orders of summary judgment that Appellant now appeals.

On appeal, Appellant presents two main arguments. First, Appellant argues that summary judgment on the negligence claims was inappropriate as expert testimony is not necessary to show that the Appellees were negligent in failing to properly disclose information on the insurance application. In support thereof, Appellant argues that Kentucky law does not require expert testimony to prove the duty of an insurance agent when ordinary tort principles of negligence suffice; that other jurisdictions provide persuasive authority where comparable scenarios do not require expert testimony to prove the duties of an insurance agent in a negligence action; and that the Kentucky Legislature has contemplated and decided in other areas of Kentucky law that an insurance agent does not provide "professional services." Second, Appellant argues that summary judgment on the claim of indemnification was inappropriate as this allegation is based in tort, not contract, providing a common law right of indemnification.

Appellees present two main counter-arguments. First, Appellees argue that the trial court properly granted summary judgment on Appellant's negligence claim because Appellant could not produce prima facie evidence of Appellees' alleged negligence. In support thereof, Appellees assert that the trial court appropriately exercised its discretion when it concluded that expert testimony was necessary to establish Appellant's negligence claims, and that because Appellant could not produce prima facie evidence of Appellees' alleged negligence, the trial court properly dismissed Appellant's negligence claim as a matter of law. Second, Appellees argue that Appellant's indemnity claim, whether based upon contractual indemnity or common law

indemnity, was properly dismissed by the trial court in the second order of summary judgment. In support thereof, Appellees assert that Appellant's contractual indemnity claim must fail as a matter of law because no contractual indemnity agreement existed between the parties. Further, Appellees state that Appellant's indemnity claim must fail, whether based on common law indemnity, in this case an alleged tort, or in contract, because Appellant cannot establish any wrongdoing on behalf of Appellees. Finally, they argue that Appellant's common law indemnity claim additionally fails as a matter of law because either (1) Appellant was not legally liable to pay the insured's fire loss claim, or (2) Appellant's liability, if any, to the insured arose out of a contractual liability and not tort liability.

At the outset we note that the applicable standard of review on appeal of a summary judgment is "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky.App.1996). Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Kentucky Rules of Civil Procedure (CR) 56.03. The trial court must view the record "in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky.1991).

Thus, summary judgment is proper only "where the movant shows that the adverse party could not prevail under any circum-

stances." *Id.* "Summary judgment should be 'cautiously applied ... in actions involving allegations of negligence.'" *Nalley v. Banis*, 240 S.W.3d 658, 660 (Ky.App. 2007) (internal citations omitted). However, "a party opposing a properly supported summary judgment motion cannot defeat that motion without presenting at least some affirmative evidence demonstrating that there is a genuine issue of material fact requiring trial." *Hubble v. Johnson*, 841 S.W.2d 169, 171 (Ky.1992), citing *Steelvest, supra. See also O'Bryan v. Cave*, 202 S.W.3d 585, 587 (Ky.2006); *Hallahan v. The Courier–Journal*, 138 S.W.3d 699, 705 (Ky.App.2004). Since "summary judgment involves only legal questions and the existence of any disputed material issues of fact, an appellate court need not defer to the trial court's decision and will review the issue *de novo.*" *Lewis v. B & R Corporation*, 56 S.W.3d 432, 436 (Ky.App. 2001).

While a review of summary judgment is *de novo*, "[a] 'trial court's ruling with regard to the necessity of an expert witness [is] within the court's sound discretion.'" *Nalley*, 240 S.W.3d at 661, (citing *Baptist Healthcare Systems, Inc. v. Miller*, 177 S.W.3d 676, 681 (Ky.2005)). Thus, we review the trial court's ruling in regard to the necessity of an expert witness for an abuse of discretion. "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Goodyear Tire and Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky.2000) (citing *Com. v. English*, 993 S.W.2d 941, 945 (Ky. 1999)). With this in mind, we turn to the parties' arguments.

Appellant first argues that summary judgment of the negligence claims was inappropriate as expert testimony is not necessary to show that Appellees were negligent in failing to properly disclose

information on the insurance application. While Appellant's argument has merit, we must give the findings of the trial court deference and are not persuaded by Appellant's argument that the trial court exceeded its discretion when it found that a jury would not have the common knowledge or experience to recognize or infer negligence from the facts sub judice. "If the subject matter of an issue in litigation is not common knowledge, then expert testimony is proper." *Baptist Healthcare,* 177 S.W.3d at 680 (internal citations omitted), and *Nalley, supra.*

In the case *sub judice,* the parties raised a legitimate question as to the need of an expert. Appellant argued that a jury would know that submitting a form which contained an incorrect answer was clearly negligence. As discussed, *supra,* we defer, based on our standard of review, to the trial court's finding that the issues were complex, thus necessitating an expert witness.

■ During oral arguments, Appellant argued for the first time that, since the trial court determined that expert testimony was necessary, it should have allowed Appellant additional time to employ an expert. In *Baptist Healthcare* the Kentucky Supreme Court concurred with the Kentucky Court of Appeals opinion, which had affirmed the trial court's denial of Appellant's motion for summary judgment. Therein, the Supreme Court discerned no abuse of trial court discretion in continuing the case to allow Appellee to identify an expert because the issue about the necessity for expert testimony was unclear. *Id.* at 680.

In *Blankenship v. Collier,* 302 S.W.3d 665 (Ky.2010), the Kentucky Supreme Court overruled our Court and affirmed a trial court's grant of a summary judgment motion where the plaintiff did not dispute that expert testimony was necessary but

never identified an expert witness. In this case, "the Court of Appeals [applying *Baptist Healthcare* ] held that before granting summary judgment in a medical malpractice case based on a plaintiff's failure to identify an expert, a trial court should first make a separate ruling determining whether an expert is actually needed in the case." *Blankenship* at 670. Further, the Court stated that, if the trial court determines "that an expert is needed, the court should then give the plaintiff a reasonable amount of time to identify and disclose an expert witness." *Id.*

But the Kentucky Supreme Court additionally noted that in *Baptist Healthcare* the essential fact of its holding was the existence of a reasonable, legitimate dispute about the necessity for expert testimony. And the Supreme Court reasoned that no such dispute existed in the facts of *Blankenship* and, therefore, the procedure followed in *Baptist Healthcare* was simply not applicable. *Blankenship* at 672. The Supreme Court, however, went on to provide further guidance in similar situations by commenting:

> In order to give guidance to the bench and bar regarding this recurring issue, we reiterate that where a plaintiff does create a legitimate dispute about the need for an expert witness prior to the expiration of the court's expert disclosure deadline, the trial court should first make a separate ruling on that issue, *i.e.,* the need, or lack of need, for expert testimony in the case. If the court determines within its discretion that an expert is needed, it should give the plaintiff a reasonable amount of time to identify an expert as outlined by this Court in *Baptist Healthcare, supra.*

*Id.* at 672–73.

The facts herein are similar but different from both *Baptist Healthcare* and

*Blankenship.* First, to state the obvious, this case is not a medical malpractice case. Second, the Appellant maintained that, based on the facts of the case, no expert testimony was necessary and did not identify an expert witness prior to the discovery deadline. Thus, the issue as to whether expert testimony was necessary did not arise until Appellee's motion for summary judgment. Further, the issue was not whether to sanction the Appellant for failure to meet a deadline to acquire an expert witness but rather to apply a legal standard regarding an absence of proof, which was necessary to go forward in this situation.

The Appellant's response to the motion for summary judgment by appellees was to continue to insist that an expert was not needed. It never requested that, instead of granting the summary judgment motion, the trial court grant it additional time to secure an expert. Clearly, given *Baptist Healthcare*, this argument was available to them. And *Blankenship* did nothing to obviate the availability of this argument to them. In fact, the Appellant objected to the Appellees citing *Blankenship* as additional authority. Significantly, not only did the Appellant fail to make this argument, it also did not properly preserve the error. Based on the mere failure to preserve, we are not required to consider it.

Yet, regardless of the failure to preserve the issue, based on the merits of the argument, Appellant cannot prevail. According to *Blankenship,* the plaintiff must "create a legitimate dispute about the need for an expert witness prior to the expiration of the court's expert disclosure deadline[.]" *Id.* Appellant never did so. The trial court is not required sua sponte to issue its own separate ruling on the need for an expert. The dispute here concerned whether the negligence alleged by the Appellant required expert testimony. Appel-

lant maintained it did not, and Appellees maintained that it did. The trial court, pursuant to its discretion, found itself in agreement with Appellees' argument and, thereby, granted the Appellees' summary judgment motion. It did not abuse its discretion in so doing.

■ Appellant next argues that summary judgment as to the claim of indemnification was inappropriate as this allegation is based in tort, not contract, providing a common law right of indemnification. Before addressing the common law right to indemnification, we first consider whether contractual indemnification existed between the parties. Initially, in paragraph 24 of the complaint, Appellant averred that "Defendants are under an express and/or implied contractual duty to indemnify and hold harmless Plaintiff Celina for Defendants' negligent actions and/or omissions." Moreover, paragraphs 25 and 26 of the complaint use the following language: "contractual duty," "breach of contract," and "refusal to indemnify." The language in the complaint supports that Appellant was seeking a claim for indemnity either expressed or implied in contract. While it is true that Kentucky recognizes that parties may enter into an indemnification agreement in a contract, according to the record on appeal the agency agreement between the parties contains no indemnity obligations. Therefore, even though Appellant continues to hint in its brief at a contractual agreement on indemnification, we find no such provision.

■ Now, we will address the issue of common law indemnity. Given that we have determined that the trial court's grant of summary judgment on the issue of negligence was appropriate, Appellant's claim of a common law right of indemnification must also fail because without negli-

gence there can be no tortious conduct. The law is well-settled in Kentucky that one is entitled to indemnify if, in the absence of a contractual indemnity obligation, the liability to a third party is the result of a wrongful act of a joint tortfeasor. *Degener v. Hall Contracting Corp.*, 27 S.W.3d 775, 780 (Ky.2000). Here, there is nothing to support that Appellees engaged in any tortious conduct. Hence, based on the absence of any proof of negligence, it was proper for the trial court to grant Appellees' motion for summary judgment on the indemnity claim.

In light of the aforementioned, we affirm the orders of summary judgment concerning negligence and indemnification.

BUCKINGHAM, Senior Judge, concurs.

CAPERTON, Judge, dissents and files separate opinion.

CAPERTON, Judge, dissenting:

I dissent from the majority's finding that no legitimate dispute existed as to whether an expert was necessary, and from the majority's interpretation of *Blankenship v. Collier*, 302 S.W.3d 665 (Ky.2010).

Certainly it would seem that if one party says no expert is needed and the other says an expert is needed then a dispute has arisen about the need for an expert. The failure of the party to identify an expert during discovery while contending that no expert is necessary falls squarely within the guidance given by *Blankenship*.

The guidance offered by *Blankenship* states:

> In order to give guidance to the bench and bar regarding this recurring issue, we reiterate that where a plaintiff does create a legitimate dispute about the need for an expert witness prior to the expiration of the court's expert disclosure deadline, the trial court should first make a separate ruling on that issue, *i.e.*, the need, or lack of need, for expert testimony in the case. If the court determines within its discretion that an expert is needed, it should give the plaintiff a reasonable amount of time to identify an expert as outlined by this Court in *Baptist Healthcare, supra.*

*Blankenship* at 672–673.

At no point does our Supreme Court limit the guidance given to medical malpractice cases. The language does state that *the trial court* should determine by a separate ruling if an expert is needed where a legitimate dispute exists and, if so, then give the plaintiff a reasonable time to identify an expert.

I would reverse the trial court's grant of summary judgment on the negligence issue and remand for further proceedings.